Van Voorhis, J.
Plaintiffs, the sole heirs and universal successors under Czechoslovakian law of Thomas Bata, deceased, have sued for a determination that they are the owners of the *337 international shoe manufacturing interests which belonged to him before his death on July 12, 1932. The complaint alleges that since then defendant, a half brother of decedent, has managed and supervised the Bata businesses and wrongfully appropriated to his own use the stock certificates, participations and other evidences of ownership of the late Thomas Bata in his widely scattered enterprises, which are enumerated in schedules annexed to the complaint.
On August 24, 1950, while visiting New York City, defendant was arrested under an ex parte order procured by plaintiffs pursuant to section 827 of the Civil Practice Act, upon the theory that he is a resident of Sao Paulo, Brazil, and that unless held in custody he will return to Brazil, by reason whereof there is danger that the enforcement of any judgment which may be obtained herein in favor of plaintiffs will be rendered ineffectual. A motion to vacate the order of arrest was made at Special Term for litigated motions and there denied. From the denial of the motion to vacate defendant has appealed to this court.
The judgment demanded in this action is that defendant deliver to plaintiffs the property above described and account to them for all dividends, income, profits and other accruals thereon. The section of the Civil Practice Act thus invoked had its origin in the old English writ of ne exeat regno. Nowadays this provisional remedy is not used frequently. In theory, it applies to equitable actions wherein the chief sanction for the performance of the judgment is punishment by contempt of court. It is to be brought into play if there is likelihood that procedure by contempt would be unavailing on account of inability to secure the person of the defendant within the jurisdiction when the time to enforce the judgment arrives. “ In a case specified in this section [827], the order of arrest can be granted only by the court, is always in its discretion and may be granted or served either before or after final judgment * * *. ” Security of $25,000 has been given by plaintiffs. Defendant’s bail was set in the sum of $250,000, which was subsequently reduced to $50,000, but such bail has not been furnished and defendant remains in jail.
Two other actions between the same parties were brought in the Supreme Court, New York County, which involve in rem procedure against specific personal property formerly belonging to Thomas Bata, deceased, which is situated in this State. The first of these actions concerns 826 shares of the capital stock of a Swiss corporation known as Leader A.G., which have been held to belong to plaintiffs under a judgment of the Supreme Court *338 now on appeal to this court. The other action is awaiting trial. It involves other specific personal property which was discovered with the 826 shares of Leader A.G-. stock in New York City, in the safe deposit box of one Frank Musita, who has been described as “ attorney-in-fact and agent of the defendant Jan A. Bata The properties covered by those two actions in rem appear to be substantially all of the Bata holdings which plaintiffs are in a position to prove are situated in New York State.
Unlike those other two actions, this action is directed against defendant in personam, to compel him to account for and deliver to plaintiffs certificates of stock or other evidences of ownership and accruals thereon in fifty-three companies located in twenty-seven different countries. It is for the purpose of enforcing any judgment compelling defendant to account for and make delivery of these items of personal property in these various countries that defendant has been arrested here under section 827.
The greater part of the personal property which is the subject .of this action is apparently located in Brazil, to which defendant transplanted the base of operations of the Bata enterprises from Czechoslovakia at or about the time of the occupation of that country by the Nazis in 1939. Since 1941 defendant has been a resident of Brazil and is now a citizen thereof.
" None of the parties to this action are residents or citizens of New York State or of the United States. Plaintiffs reside in , Canada, having emigrated there from Czechoslovakia.
This court simultaneously is affirming an order denying defendant’s motion asking this court to decline jurisdiction of the subject matter of the action as matter of right, or in the discretion of the court under the doctrine of forum non conveniens. That motion was denied, notwithstanding that plaintiffs and defendants are nonresidents, and that the transactions occurred outside of the United States, for the reason that defendant is charged with possessing or controlling some property in New York State other than that which is already subject to in rem procedure in the said other two pending actions. Such property stands in the names of other persons than defendant, who are not parties to this action, and defendant’s possession or control over it may become the subject of litigation. That may be the reason on account of which it was not subjected to in rem procedure in the other actions. In any event, there is little evidence before the court concerning what property defendant has in New York State, other than what is involved in those actions, and this has been shown to be at most but a small fraction of the total assets involved in this lawsuit. We have considered that *339 jurisdiction of the action ought not to be refused on motion in advance of a trial, which may disclose from the evidence that defendant is in possession or control of these few assets in New York State, not covered by the other actions. However, allegations in the affidavits that defendant probably has a small amount of property here does not warrant invoking the drastic remedy provided by section 827 of the Civil Practice Act, in holding the person of the defendant as security to guarantee performance by him of any judgment which plaintiffs may obtain with respect to the greater part of his assets situated in other parts of the world. With the exception of $15,655.80 in an account at Chemical Bank & Trust Company in New York City, in the name of the estate of said Frank Muska, purporting to represent dividends on shares of the French Bata company which are involved in this action, and a house at 330 Bast 72nd Street, also in New York City, in the name of one John Hoza, an employee of Bata Shoe Company, Inc., a New York corporation, no specific assets have been shown to be located in this State except such as are already the subject of in rem procedure in the other two actions previously mentioned. The fact that Bata Shoe Company, Inc., is a domestic corporation does not prove that defendant’s stock in it is here.
The decision of the New York Supreme Court in the Leader action determines, to be sure, that the 826 shares of stock in the Swiss corporation known as Leader A.U., is the property of plaintiffs, on a theory which might invest plaintiffs with title to most of the rest of the Bata enterprises, but nothing contained in that decision determines what securities in these enterprises, other than the 826 shares of Leader stock, are located in New York State. We are aware of the seriousness of the charges made against defendant by plaintiffs, which have been sustained in the Leader action, but that does not tend to establish what property is subject to defendant’s possession or control in New York State, nor should it authorize holding defendant as a hostage to insure the enforcement of any in personam judgment which might here be rendered against him with respect to assets situated in other countries — in other words, which in effect would require him to take such steps as would compel recognition and enforcement of our judgment by the courts of other countries in whose jurisdiction those assets are located.
This is especially true where this severe provisional remedy has been invoked ait the instance of plaintiffs who are not citizens or residents of New York State nor of the United States. The reason on, account of which this action has been brought in this *340 jurisdiction, is not that plaintiffs or defendant reside here, or that any considerable amount of property which is the subject of this action has been shown to have been discovered here, or that the transactions complained of happened here, but that plaintiffs have caught the defendant here on a business trip, and have caused him to be incarcerated in order, as has been stated, to compel him to take such action as would enforce in other parts of the world such rights as they may have against him as trustee ex maleficio, on account of a course of conduct commenced by him seventeen years ago.
We do not imply that section 827 can never be employed to render effectual the enforcement of an equitable decree directing acts to be performed beyond the boundaries of this State, but an order of arrest should not be granted under the circumstances of this case where that is the principal object of the action. Neither is it enough that defendant is suspected to have substantial assets in New York State. He is not to be arrested and then called upon to prove the contrary. The burden is upon the party seeking such an order to show that the essential underlying facts exist.
We are not passing upon the merits of this lawsuit, nor of the Leader action from which an appeal to this court is now pending, and nothing said herein should be so construed. But it must be borne in mind that civil arrest, especially that akin to the old writ of ne exeat, is a drastic remedy seldom resorted to in this country in the present era, that at most it lies always in the discretion of the court, and that it should not be used except where the right to it is absolutely clear.
In this case the civil liability of defendant to plaintiffs has not been shown to be the counterpart of criminal liability. It may well be that a man should be subjected to civil arrest to redress private rights under circumstances where he would in all probability be subject to criminal prosecution. In this instance, the facts which are stated in the decision in the Leader action fall short of criminal liability, even if prosecution for defendant’s conduct, dating from seventeen years ago, were not barred by criminal statutes of limitation. Whatever other effect they may have or not have, the documents in the late Thomas Bata’s handwriting, found in his safe deposit box in Czechoslovakia upon his death in 1932, would probably be sufficient to relieve defendant from imputations of criminality for having retained these assets. Those documents stated, in substance, that these assets either had been transferred or were to be transferred to defendant for 50,000,000 kroner. The lapse of *341 time would render criminal prosecution of defendant most difficult under any circumstances.
The difficulty in sustaining an order of arrest in this action, on the papers which are now before the court, is illustrated by the argument made by plaintiffs upon their appeal to restore defendant’s bail from $50,000 to $250,000. In answer to the argument for defendant that he was unable to bring blocked assets from other countries into the United States or to raise money here in order to furnish the $50,000 to which his bail was reduced on September 5,1950, plaintiffs assert in their brief that although the ability to furnish bail bears upon the amount to be set in the case of a civil arrest under section 826 of the Civil Practice Act in an action at law (as it would also bear upon the amount to be set in a criminal prosecution), nevertheless, where a defendant is held, as in this case, under section 827, the amount of bail may be greatly in excess of what he is able to furnish. The contention is that he is to be held in a sum to be measured by what is involved in the action. “ The statutory remedy ”, says plaintiffs’ brief, “ thus rigorously pursues the single end of insuring that the final decree of the Court will be made effectual upon the person of the defendant. By so doing it inescapably authorizes a direct relation between the value of the judgment that defendant’s absence can defeat and the amount of bail on the arrest that insures his presence. Nothing in the statute nor in the nature of arrest in equity relates the amount of bail to the power of the defendant to raise the bail.” And again: “ As the final in personam process of a court of equity is satisfied with nothing less than complete performance coerced through imprisonment, the order of arrest directed to assuring the amenability of the defendant to that process requires a bail that will be adequate because, being measured in terms of the value of the decree, it affords the defendant no option except compliance.” This reasoning would appear to require that defendant be kept in jail pending the decree and afterward, unless he effectively directs that all of the assets in other States and countries which are the subject of this action shall abide the outcome of the judgment to be rendered in New York State. It is not enough to support such a procedure that plaintiffs, as they offered to do upon the argument, might recede to some extent from this position as matter of grace. We are dealing with a summary procedure involving personal liberty. If defendant’s liberty is to be measured, in advance of trial, without knowing what the evidence will be, in terms of the value of the decree, the burden is on plaintiffs to furnish affidavits indicating with a large degree *342 of certainty not only that plaintiffs will obtain a decree, but also what it will be worth. While $50,000, or even the $250,000 at which the bail was originally set, may be less than the Bata enterprises are worth in all parts of the world, there is nothing in this record to show that defendant has assets of that amount in this State, or even, with certainty, that he has assets here at all. The courts should not speculate in arriving at an amount which shall be the measure of a person’s liberty. The maintenance of this principle is of the greatest consequence. That is especially true in this instance, in view of the fact that we think that defendant ought not to be imprisoned in this State in order to render effectual in other jurisdictions a judgment which would ordinarily be given effect only under principles of comity. There is no satisfactory proof before this court that defendant owns or has control over as much as $50,000 of property in the State of New York or even in the United States. The affidavits before the court, in our judgment, leave this whole subject in too much uncertainty to warrant resort to so severe and summary a remedy. Under all the circumstances we find that on the facts and on the law the order of arrest herein should have been vacated and the failure so to do constituted an abuse of discretion.
The order denying defendant’s motion to dismiss the complaint for lack of jurisdiction or on the ground of forum non conveniens should be affirmed with costs.
The order appealed from, denying defendant’s motion to vacate the order of arrest of August 8,1950, should be reversed and said motion granted, with costs to appellant.
The appeal from the order of September 5, 1950, reducing defendant’s bail to $50,000 should be dismissed as moot, and the order fixing the bail is vacated.
Settle orders 3671 and 3672 on notice.